Christen, Circuit Judge,
concurring:
I agree with the majority that the petition should be denied, but I reach that result in a different way.
I conclude, contrary to the majority’s position, that petitioners established the “irreducible constitutional minimum” of Article III standing. See Bennett v. Spear, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). EPA argues that petitioners lack standing because they cannot demonstrate redressability. According to EPA, petitioners’ requested relief (remand with direction to make a section 179 finding) will extend the attainment deadline for the South Coast and San Joaquin Valley because a section 179(c) finding will restart section 172(a)(2)(A)’s ten-year deadline. See 42 U.S.C §§ 7509(d), 7502(a)(2)(A). The majority concludes that petitioners lack standing. It-reasons that petitioners failed to explain how a remand from our court “would result in the San Joaquin Valley and South Coast air basins implementing more stringent anti-pollution measures or attaining the one-hour ozone standard more expeditiously.”
I agree that a remand could give the basins even more time to attain the one-hour standard, but petitioners also argued before the Agency and in our court that applying section 179(c) would require California to develop substantively stricter plans. For example, petitioners argued before the Agency “that section 179 does not permit the use of- section 182(e)(5) [new technology] measures.” 79 Fed. Reg. 52,-526, 52,531 (Sept. 3, 2014). And in its briefing to our court, petitioners explained that “EPA’s refusal to comply with the strict mandates of the Act has allowed ... harmful conditions to persist by permitting the air districts to adopt plans that are weaker than those required by the Clean Air Act.” A comparison between the statute (which governed pre-revocation SIPs) and EPA’s regulation (which governs post-revocation SIPs) lends support to petitioners’ argument. Compare 42 U.S.C. § 7410 (listing requirements for a SIP revision that fol *924 lows from a section 179(c) finding of failure to attain), with 40 C.F.R. §§ 51.905, 51.900(f) (listing requirements for a SIP revision that follows from a section 301 finding of failure to attain a revoked standard). In my view, petitioners’ contention that remand would produce substantively more protective SIPs is enough to establish redressability. In other words, I am persuaded by petitioners that they made a sufficient showing of redressability because even if remand for application of section 179(c) might technically give the districts more time to attain, it would also require California to develop substantively stricter plans that would ultimately produce cleaner air. See Wash. Envtl. Council v. Bellon, 732 F.3d 1131, 1139 (9th Cir. 2013) (petitioners must show that their “injury is likely to be.redressed by a favorable court decision” (emphasis added) (citing Lujan v. Def. of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))).
EPA also argues that petitioners’ lawsuit is untimely, but this is clearly not the case. EPA revoked the one-hour standard jn 2004, and, as part of this rulemaking, it stated it would not make section 179(c) failure-to-attain findings for the revoked standard. See 40 C.F.R. § 51.905(e)(2)(i)(A) (2006 ed.). The D.C. Circuit “vacate[d] those portions of the 2004 Rule [40 C.F.R. § 51.905 (2006 ed.) ] that ... allow backsliding,” in South Coast Air Quality Management District v. EPA (SCAQMD), 472 F.3d 882, 905 (D.C. Cir. 2006). The D.C. Circuit left it up to EPA to determine what provision it should use to trigger the anti-backsliding measures once an area fails .to attain. Id. at 902. It was therefore reasonable for petitioners to read SCAQMD as reinstating EPA’s obligation to trigger these measures with a section 179(c) finding. See 42 U.S.C. § 7509(c)(1) (section 179(c) providing for “[njotice of failure to attain”); id. § 7511d(a) (anti-backsliding provision that triggers on failure' to attain); id. § 7502(c)(9) (same). Petitioners could not have known that EPA intended to rely on section 301 until EPA issued the December 30, 2011 Determinations Rule, cf. Sierra Club de Puerto Rico v. EPA, 815 F.3d 22, 27-28 (D.C. Cir. 2016) (explaining when a claim under the CAA ripens), and petitioners challenged that rule within sixty days of its publication in the Federal Register. Petitioners’ challenge was therefore timely. See 42 U.S.C. § 7607(b).
That leaves the merits. This case is, at its core, a Chevron case, and in my view, the petition must be denied because EPA reasonably interpreted an ambiguous statute. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Clean Air Act does “riot directly address[ ] the precise question at issue,” id. at 843, 104 S.Ct. 2778, that is, whether EPA was required to use section 179(c) to trigger the Act’s anti-backsliding provisions after it revoked the one-hour standard. Section 179(c) does not say whether it applies to a revoked standard. See 42 U.S.C. § 7509(c). Sections 185(a) and 179(c)(9) (the relevant anti-backsliding measures) are likewise silent: both provisions trigger when an area “fails to attain,” 42 U.S.C. § 7511d(a); 42 U.S.C. § 7502(c)(9), but neither states that EPA must make the “failure to attain” finding under section 179(c). Because the statute is ambiguous, we must defer to EPA’s interpretation of it as long as that interpretation was “permissible.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778. I am persuaded that it was.
EPA invoked its general rulemaking authority under the Clean Air Act as the statutory basis for its finding that the South Coast and San Joaquin Valley failed to attain the revoked one-hour standard. See 76 Fed. Reg. 82,133 (Dec. 30, 2011) (final rule); 76 Fed. Reg. 56,694, 56,701 (Sept. 14, 2011) (proposed rule citing sec *925 tion 301(a), 42 U.S.C. § 7601(a)). That provision gives EPA broad authority “to prescribe such regulations as are necessary to carry out [its] functions under this chapter.” 42 U.S.C. § 7601(a)(1). As the D.C. Circuit explained in SCAQMD, one of EPA’s essential functions is to “determine its procedure” for triggering the Act’s anti-backsliding provisions. 472 F.3d at 902. No one disputes that EPA’s finding ünder section 301 served this purpose. Particularly in light of our recent reminder that “[t]he only remaining requirements as to the one-hour NAAQS are the anti-backsliding limitations,” Nat. Res. Def. Council v. EPA, 779 F.3d 1119, 1125 (9th Cir. 2015) (citation omitted), EPA’s decision to make an attainment finding under section 301(a) for the limited purpose of triggering the anti-backsliding provisions in sections 185(a) and 179(c)(9) was reasonable.